UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEVEN MARSHALL SEARLES,

                                        Plaintiff,

v.                                                              1:14-CV-1124

                                                                (TJM/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                               HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

HON. RICHARD S. HARTUNIAN                       SANDRA M. GROSSFELD, ESQ.
United States Attorney for the                  Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                       STEPHEN P. CONTE, ESQ.
Social Security Administration                  Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

        This matter was referred to the undersigned for report and recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs.  (Dkt. Nos. 11 and 12.)  Oral argument was not heard.  For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was forty-seven years old at the time of the hearing.  (Administrative Transcript at 40.[1])  He graduated from high school, but has no further education.  (T. at 41.)  Plaintiff has not worked since January 2012.  *Id*.  He was a residential counselor for thirteen years before being fired in January 2012 for sleeping on the job.  (T. at 41-42.)  Plaintiff alleges disability due to his inability to sit for long periods of time, depression, problems standing for long periods of time, and a mass on his left buttock.  (T. at 48.)

Plaintiff applied for disability insurance benefits and Supplemental Security Income ("SSI") on June 4, 2012.  (T. at 22.)  The application was denied on October 26, 2012.  *Id*. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  *Id*.  The hearing was held on October 30, 2013.  *Id*.  On January 21, 2014, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 19.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 10, 2014. (T. at 3.)  Plaintiff then timely commenced this action on September 12, 2014.  (Dkt. No. 1.)

---

[1]        The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010);[2] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Here, the ALJ found that Plaintiff has the following severe impairments: obesity, kidney injury, osteoarthritis of the left knee, lumbar degenerative disc disease, headaches, and left calf ulcer. (T. at 24.) He found that Plaintiff did not have an impairment or combination of

---

[2]    On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

impairments that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1.  (T. at 28; *see also* 20 C.F.R. §§ 404.1520(d), 404.1525,

404.1526, 416.920(d), 416.925 and 416.926.)  The ALJ found that Plaintiff has the residual

functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R.

§§ 404.1567(a) and 416.967(a).  *Id*.  He found that considering Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national economy that

the claimant can perform.  (T. at 30; *see also* 20 C.F.R. §§ 404.1569 and 416.969.)  Therefore,

the ALJ found Plaintiff not disabled.  (T. at 31.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the RFC determination by the ALJ was not supported by substantial

evidence because the ALJ did not discuss the treating physician assistant's opinion and the

credibility determination was incorrect; and that the Step Five finding was not supported by

substantial evidence because the ALJ did not consult a vocational expert.  (Dkt. No. 11.)

Defendant contends that the ALJ's decision applied the correct legal standards and is

supported by substantial evidence and thus should be affirmed.  (Dkt. No. 12.)

## V.    DISCUSSION

### A.    Opinion Evidence and the RFC Determination

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence.  (Dkt. No.

11 at 15.[3])  Specifically, Plaintiff argues that the ALJ should have given weight to the opinion of

Physician Assistant Sebastian Martorana, RPA-C ("PA Martorana"); that the ALJ failed to

---

[3]       Page references to the parties' briefs identified by docket number are to the
numbers assigned by the Court's CM/ECF electronic docketing system.

properly weigh and apply the opinion of Mena Stramenga, Ph.D.; and that the ALJ's RFC

assessment fails to consider Plaintiff's non-severe impairment of a left buttock abscess and his

obesity. *Id*. at 15-23. Defendant argues that the ALJ's RFC assessment was proper and

supported by substantial evidence. (Dkt. No. 12 at 8-14.)

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum remaining ability

to do sustained work activities in an ordinary work setting on a regular and continuing basis, and

the RFC assessment must include a discussion of the individual's abilities on that basis. A

regular and continuing basis means eight hours a day, for five days a week, or an equivalent work

schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*,

198 F.3d 45, 42 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a

physician's opinion. 20 C.F.R. 404.1546(c). In determining RFC, the ALJ can consider a variety

of factors including a treating physician's or examining physician's observations of limitations,

the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting

effects of all impairments even those not deemed severe. 20 C.F.R. § 404.1545(a). Age,

education, past work experience, and transferability of skills are vocational factors to be

considered. *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are

determined by evaluation of exertional and nonexertional limitations. Exertional limitations

include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R.

§ 404.1569a(b).

The ALJ "is not required to accept the claimant's subjective complaints without question;

he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat*, 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

### 1.   Opinion of Sebastian Martorana, RPA-C

The opinion of PA Martorana was not considered by the ALJ. (T. at 19-36.) However, the Court finds this constitutes a harmless error as PA Martorana's opinion was consistent with the RFC of sedentary work found by the ALJ. (T. at 441-442.)

Initially, physician assistants are not considered "acceptable medical sources to establish whether you [the claimant] have a medically determinable impairment(s)." 20 C.F.R. § 404.1513; *see also* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006) (information from other sources cannot establish the existence of a medically determinable impairment). Evidence from other sources such as a physician assistant's opinion may be used to demonstrate the severity of a claimant's impairment(s) and how it affects a claimant's ability to work. *Id.* at § 404.1513(d)(1). However, the opinions of such other sources

8

are not entitled to controlling weight inasmuch as they are not "acceptable medical sources." *Id*. at § 404.1513(a).

Nevertheless, the opinions of other sources such as a physician assistant must be considered because the court is required to evaluate all evidence that comes before it. *Id.* at § 404.1527(c). In some situations, the opinions of other sources may be entitled to some extra consideration. *See Kohler*, 546 F.3d at 268-69 (finding that the nurse practitioner's opinion should have been given some consideration because she was the only medical professional available to claimant for long stretches of time in the very rural North Country) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d. Cir. 1983) (stating that the opinion of the nurse practitioner who treated the claimant on a regular basis was entitled to some extra consideration)). The Secretary had the right to give the opinion the weight they believe it deserves. *Diaz v. Shalala*, 59 F.3d 307, 316 (2d Cir. 1995) (finding that the ALJ did not have to give controlling weight to a chiropractor's opinion). The ALJ should explain the reasons for the weight given to these opinions, or otherwise ensure that the discussion of the evidence in the decision allows a claimant to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. SSR 06-03p, 2006 WL 2329939, at * 6.

The factors required for analysis of a treating physician's opinion (20 C.F.R. §§ 404.1514(d), 416.927(d)) can also be applied to opinion evidence from other sources. SSR 06-03p, 2006 WL 2329939, at *4. These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of

expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. *Id.*

The record contains evidence that PA Martorana worked with the Capitol Care Medical Group, Family Practice Ravena ("Capitol Care"), and treated Plaintiff on ten different treatment dates between May 23, 2012, and May 31, 2013. (T. at 254-70, 372-81, 387.) Physicians in that group that treated Plaintiff included Theresa A. Sirico, D.O. (T. at 251-53), Patrick Caufield, M.D. (T. at 384-86), and Bryan Goddard, M.D. (T. at 390-97.) Plaintiff stated at his hearing that he received care through Capital Care from Dr. Sirico (T. at 43), but the record shows Dr. Siroco had only one direct medical encounter with Plaintiff. (T. at 251-253.) Dr. Caufield also treated Plaintiff on one occasion, and Dr. Goddard treated him on three dates. (T. at 384-86, 390-97.) Most of the treatment involved care throughout an approximate year and a half time frame from February 2012 to August 2013 for Plaintiff's left leg ulcer (T. at 251-70, 372-97) and a buttock ulcer for approximately four of those months from May 2013 to August 2013. (T. at 381-97.) Plaintiff's active problems also included back pain, hypertension, obesity, smoking addiction, headache, and hypothyroidism. *See, e.g.,* T. at 254, 396.

In the medical source statement dated October of 2012, PA Martorana lists Plaintiff's medical conditions as "HTN" [hypertension], hypothyroidism, chronic leg wound, and obesity. (T. at 441.) PA Martorana further stated that Plaintiff would be moderately limited in walking, standing, lifting, carrying, stairs or other climbing, and functioning in a work setting at a consistent pace. (T. at 442.) PA Martorana found no evidence of limitations for Plaintiff in sitting or using his hands; understanding, remembering, and carrying out instructions; maintaining attention/concentration; making simple decisions; interacting appropriately with

others; maintaining appropriate social behavior; and maintaining basic standards of personal hygiene and grooming. *Id.* Importantly, PA Martorana also opined that these restrictions were expected to last four to six months. *Id.*

While the ALJ should have considered PA Martorana's opinion, the Court finds the ALJ's failure to address and give weight to PA Martorana's opinion was harmless error. As noted, PA Martorana only expected Plaintiff's identified limitations to last four to six months. *Id.* Therefore, the opinion cannot be the basis for establishing a severe impairment. 20 C.F.R. §§ 404.1509, 416.909. More significantly, PA Martorana's opinion regarding Plaintiff's limitations was consistent with the RFC of sedentary work found by the ALJ. (T. at 28, 442.) According to PA Martorana, Plaintiff had no limitation regarding sitting and only moderate limitations in other areas such as walking and standing. (T. at 442.) Sedentary work involves lifting no more than ten pounds and sitting; and walking and standing are only required occasionally. 20 C.F.R. §§ 404.1567(a), 416.967(a); *see also* SSR 83-10, 1983 WL 31251, at *5 (SSA 1983).

PA Martorana's opinion is also consistent with other medical opinions of record. For example, consultative examiner Kautilya Puri, M.D., found that Plaintiff had mild limitations to squatting and moderate exertion, but no objective limitations to fine motor skills. (T. at 287.) Therefore, the Court concludes that PA Martorana's opinion was consistent with the ALJ's determination that Plaintiff could perform sedentary work such that the ALJ's failure to consider it was harmless error. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding that it was harmless error when there was no reasonable likelihood that [the ALJ's] consideration of the same doctor's 2002 report would have changed the ALJ's determination that the plaintiff was not

disabled during the closed period).

<div style="text-align: center; font-weight: bold;">

    2.    Mental Impairments and the Opinions of Mena Stramenga, Ph.D. and J. Dambrocia, Ph.D.

</div>

Plaintiff argues that the ALJ relied heavily on the opinion of Mena Stramenga, Ph.D., but did not weigh it in accordance with the regulations because he failed to take nonexertional limitations into account when determining Plaintiff's RFC.  (Dkt. No. 11 at 17.)  Plaintiff also argues that the ALJ did not properly apply a function by function analysis of Plaintiff's mental limitations as required under the regulations.  *Id*.  Defendant argues that the ALJ did take these nonexertional impairments into account in his consideration of the factors that must be reviewed under the regulations in determining any mental limitations, their severity, and how any such limitations effect Plaintiff's ability to do basic work activities.  (Dkt. No. 12 at 11.)  *See* 20 C.F.R. §§ 404.1520a(c), 416.920(c) (setting forth factors used in determining whether a mental impairment is severe).

Dr. Stramenga noted Plaintiff appeared well-groomed and his eye contact was appropriate.  (T. at 290.)  His speech was fluent; his language skills were appropriate; his thought processes were coherent and goal-directed; and his affect was of full range and appropriate in speech and thought content.  *Id.*  Plaintiff was oriented, his mood was neutral, and his sensorium was clear.  *Id.*  Dr. Stramenga found Plaintiff's attention and concentration were mildly impaired, as were his recent and remote memory skills, due to anxiety or nervousness; however, his intellectual functioning was within average range and his insight and judgment were good.  (T. at 291.)  Overall, Dr. Stramenga opined that Plaintiff had "mild difficulties maintaining attention and concentration" and he "may have mild difficulties maintaining a regular schedule[,] . . .

learning new tasks and performing complex tasks independently." *Id.* According to Dr. Stamenga, Plaintiff also had mild to moderate difficulties dealing with stress. *Id.* However, Dr. Stramenga further found that Plaintiff could follow and understand simple instructions and directions, perform simple tasks independently, make appropriate decisions, and relate adequately to others. *Id.* The ALJ did not specify any weight he assigned to this opinion, although he did consider it in his decision. (T. at 27.)

In a State Agency Psychology review, J. Dambrocia, Ph.D., determined Plaintiff had an anxiety related disorder with non-severe impairments. (T. at 345.) In rating related functional limitations, Dr. Dambrocia found Plaintiff had mild difficulties maintaining social function and concentration, persistence, or pace. (T. at 355.) However, he had no restrictions of activities of daily living, and never had episodes of deterioration. *Id.* The ALJ granted Dr. Dambrocia's opinion "significant weight." (T. at 27.)

The regulations require application of a special technique at the second and third steps of the five-step framework for evaluating the severity of mental impairments. 20 C.F.R. § 404.1520a.

> Where the alleged disability consists of a mental impairment, a special procedure must be followed at each level of administrative review "in evaluating the severity of mental impairments for adults . . . ." §§ 404.1520a(a), 416.920a(a). First, "the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in [the] case record" must be recorded. §§ 404.1520a(b)(1), 416.920a(a). Second, if a mental impairment is determined to exist, then the Commissioner "must indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent." §§ 404.1520a(b)(2), 416.920a(b)(2). Next, the degree of functional loss resulting from the impairment must be rated on a scale ranging from no limitation to severe limitation which is incompatible with the ability to do work-like functions. §§ 404.1520a(b)(3), 416.920a(b)(3). Four factors are analyzed: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4)

deterioration or decompensation in work or work-like settings. *Id.* The next steps involve determining the severity of the mental impairment and whether it meets or equals a listed mental disorder. §§ 404.1520a(c), 416.920a(c). Finally, if the impairment is severe, but it does not meet or equal a listed mental disorder, an RFC assessment must be completed. §§ 404.1520a(c)(3), 416.920a(c)(3).

*Martone*, 70 F. Supp. 2d at 149.

This requires the ALJ to first determine whether the claimant has a medically determinable mental impairment, and then rate the degree of functional limitation resulting from the impairments. *Id.* The four broad functional areas, commonly referred to as "paragraph B" criteria, are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of compensation. 20 C.F.R. §404.1520a(c)(3). If the degree of limitation in each of the first three areas is mild or better then the reviewing authority will generally conclude that the claimant's mental impairment is not severe and will deny benefits. 20 C.F.R. § 404.1520a(d)(1). Application of this process must be documented and the ALJ's written decision must reflect application of the technique and include a specific finding as to the degree of limitation in each of the four functional areas. *Kohler*, 546 F.3d at 266 (remanding where the ALJ did not adhere to the special technique); 20 C.F.R. § 404.1520a(e).

Failure to follow this technique is error and results in an inadequately developed record with regards to the four functional areas. *Kohler*, 546 F.3d at 267. Where the court cannot identify findings regarding the degree of claimant's limitations to discern whether the ALJ properly considered all evidence relevant to those areas, the court cannot determine whether the ALJ's decision is supported by substantial evidence and reflects application of the correct legal standards. *Id.* at 269.

Contrary to Plaintiff's assertions, the ALJ properly reviewed the four relevant "paragraph

B" functional areas for mental disorders.  (T. at 27.)  First, it should be noted that Plaintiff denied any psychiatric history and he has not submitted any mental health care records for consideration. (T. at 289.)

Next, in reviewing the record, the ALJ correctly concluded Plaintiff had no limitations with regard to activities of daily living and this determination is supported by the record evidence.  (T. at 27.)  Dr. Dambrocia found Plaintiff had no restrictions in this area.  (T. at 355.) Dr. Stramenga noted Plaintiff was able to attend to his personal hygiene, and manage money.  (T. at 291.)  While he needed some help with cooking, cleaning, laundry, and shopping, he was able to drive but did not because of a driver's license suspension.  *Id.*  Plaintiff reported to one examiner that "he can do some cooking, shopping, showering, bathing, dressing, watching TV, reading, and going out."  (T. at 285.)  He testified he had no problems bathing and dressing himself; he could feed his youngest child; he helped his other children with their homework and played board games with them.  (T. at 45-47.)  Plaintiff consistently reported he could attend to his personal care.  (T. at 177-78.)

The ALJ also found Plaintiff had no limitations in social functioning.  (T. at 27.) Plaintiff's testimony supports this finding since he testified that he lives with his wife and six children, and socializes with other family and friends as well.  (T. at 47-48.)  He talks to others on the phone and computer.  (T. at 181.)  He regularly goes to the store and medical appointments.  *Id.*  His medical records generally reveal that he is alert, oriented, and cooperative.  *See, e.g.*, T. at 232-47, 251-68, 372-395.  He reported going on vacation to one of his providers.  (T. at 497.)  Dr. Stramenga found he related adequately with others, he had appropriate eye contact, and his affect was full range and appropriate.  (T. at 290.)  Plaintiff also

reported that he did not have any problems getting along with people in authority. (T. at 183.)

The ALJ then found mild limitations in the functional area of concentration, persistence, or pace. (T. at 27.) Plaintiff reported that he did not have problems remembering things or paying attention, and he could finish what he started but it may take longer. *Id.* Dr. Dambrocia found him mildly limited in this area, as did Dr. Stramenga. (T. at 291, 355.) Dr. Stramenga also found that Plaintiff could follow and understand simple instructions and directions, and perform simple tasks independently. (T. at 291.)

Regarding the last functional area of episodes of decompensation, the ALJ found Plaintiff has had none. (T. at 27.) Plaintiff denied any psychiatric history, and did not have any psychiatric hospitalizations during the relevant time period. (T. at 289, 355.)

Based upon the above, the Court finds the ALJ properly applied the function by function analysis required and correctly determined Plaintiff's mental impairment to be nonsevere. The analysis was complete and based upon substantial evidence in the record. Additionally, in determining the RFC, the ALJ considered this detailed mental assessment which included the itemization of the various functions and incorporated the assessment into Plaintiff's RFC. (T. at 28.) Therefore, Court finds the RFC determination that Plaintiff retained the ability to perform a full range of sedentary work properly reflects Plaintiff's minimal degree of mental limitation.

The Court also finds Plaintiff's argument that the ALJ erred by not specifically stating how much weight he gave Dr. Stramenga's opinion is without merit. (Dkt. No. 11 at 17.) As noted in reviewing the "paragraph B" factors above, the ALJ considered Dr. Stramenga's report and opinion. (T. at 27.) Since the regulations require that "regardless of its source, we will evaluate every medical opinion we receive," 20 C.F.R. § 1527(c), and Dr. Stramenga's opinion

was considered by the ALJ in determining the severity of Plaintiff's mental limitations and in the RFC determination, the Court finds the ALJ properly treated Dr. Stramenga's report although he did not assign any specific weight to it. *See generally Curtis v. Colvin*, No. 5:11-cv-1001 (GLS), 2013 WL 3327957, at *5, 2013 U.S. Dist. LEXIS 92615, at *15 (N.D.N.Y. July 2, 2013) ("despite the lack of specific weight assigned to the opinions, the court is able to discern with ease the ALJ's reasoning, and his treatment of that evidence will not be disturbed.").

### 3. Other Medical Evidence, Plaintiff's Skin Abscess and Obesity

Plaintiff argues that the ALJ did not properly take into account a skin abscess on his buttock and his obesity in determining the RFC. (Dkt. No. 11 at 18-22.) Defendant asserts that the ALJ properly accounted for Plaintiff's impairments in determining the RFC. (Dkt. No. 12 at 12-14.)

Consultant, Kautilya Puri, M.D., examined Plaintiff on September 13, 2012. (T. at 284.) Dr. Puri noted Plaintiff was morbidly obese. (T. at 285.) He walked with a limp favoring his right side, and could stand on his heels and toes but could not walk on them. *Id.* He was able to rise from a chair without difficulty, and did not need help changing for the exam or getting on and off the exam table. *Id.* Plaintiff's examination showed full range of motion of his cervical spine, shoulders, elbows, forearms, wrists, and ankles. (T. at 286.) His thoracic spine was normal, and his lumbar spine showed some decreased flexion and mild local tenderness. *Id.* While his hips and knees showed a five to ten degree decreased range of motion, he showed no muscle atrophy in his extremities, his hand and finger dexterity were in tact, and his grip strength was full. *Id.* A left knee X-ray showed no fracture or arthritis, but possible venous insufficiency and some ossification possibly "related to prior trauma." (T. at 288.) Dr. Puri ultimately opined

that Plaintiff did "not have any objective limitations in communication or fine motor or gross motor activity. There were no objective limitations to . . . [his] gait or to his activities of daily living . . . . He has mild limitation to squatting . . . . [and] to moderate exertion." (T. at 287.) Dr. Puri also recommended that Plaintiff "not be in an environment which would increase his respiratory complaints." *Id.* The ALJ gave "significant weight" to Dr. Puri's opinion. (T. at 29.)

Plaintiff changed his primary care provider to David Colman, M.D., and first treated with Dr. Colman on October 25, 2013, to establish care. (T. at 922.) Plaintiff measured five feet eleven and a half inches; his weight was 307 pounds, and his body mass index ("BMI") was 42.04. *Id.* His acute medical issue at that time included a left buttock abscess and depression/anxiety after being fired from a job. *Id.* His physical exam was unremarkable, except his left buttock showed minimal redness, no skin breakdown, and minimal hardness without pain. (T. at 923.) Plaintiff was seen again by Dr. Colman on November 19, 2013. (T. at 920.) His weight was 299 pounds and his BMI was 40.95. *Id.* At that time, his buttock showed some hyperpigmentation with density underlying the skin, but no signs of discharge, bleeding or redness. The area was minimally tender to the touch. *Id.* Dr. Colman prescribed neurontin[4] for Plaintiff's complaints of chronic pain "related to his buttock abscess and his reported peripheral neuropathy." (T. at 921.) Dr. Colman completed a medical source statement dated January 3, 2014, but was unable to provide any opinion on Plaintiff's functional abilities based upon his limited interaction with Plaintiff. (T. at 915.)

Regarding Plaintiff's obesity, his providers at Capitol Care noted his weight at every visit

---

[4]     Neurontin is a medicine typically used to relieve certain types of nerve pain. *See* www.pdrhealth.com/drugs/neurontin, last visited 11/30/2015.

and listed obesity as one of his active problems. *See generally* T. at 251-268; 372-393. On referral from PA Martorana at Capitol Care, Plaintiff was seen by Jonathan Canete, M.D., a surgeon, on July 19, 2013, for evaluation and management of the buttock abscess. (T. at 420.) At that time, Plaintiff's weight was 309.8 pounds and his BMI was 42.01. (T. at 421.) Dr. Canete noted that the Plaintiff was morbidly obese, and the buttock abscess was assessed as tender. (T. at 422.) Possible surgery for the abscess was discussed. *Id.* Dr. Canete assessed Plaintiff again on September 6, 2013, noting his weight and BMI, and that he was morbidly obese. (T. at 418.) At that time, Dr. Canete recommended against surgery since follow up wound care was compromised due to Plaintiff's residing in a motel at the time. (T. at 418, 419.) He did refer the Plaintiff for a plastic surgery consult. (T. at 419.) No other records from Dr. Canete were submitted to SSA, and Dr. Canete did not provide any opinion on Plaintiff's functional capacity. Notably, however, Dr. Colman indicated in his report of October 25, 2013, that Plaintiff was scheduled for surgery for the buttock abscess in December; and in his report of November 19, 2013, Dr. Colman indicated that Plaintiff was living in an apartment. (T. at 920, 922.)

The Court finds no merit to Plaintiff's initial argument that the ALJ erred in failing to account for "the impact of Plaintiff's inability to afford treatment" regarding the surgery for the buttock abscess. (Dkt. No. 11 at 19.) Plaintiff's argument that the ALJ failed to account for Plaintiff's limitations related to the abscess as a nonsevere impairment likewise has no merit. First, the record does not establish that Plaintiff could not afford treatment for his buttock abscess; rather, it shows that surgery was delayed because of his living situation in the Fall of 2013. Plaintiff testified at his hearing that he had medical insurance. (T. at 41.) He also testified

19

that Dr. Canete was his general surgeon, and he had a mass on his buttock that had to be removed. (T. at 43.) Dr. Canete's records indicate that surgery was discussed (T. at 418-419), and that Plaintiff was being referred to a plastic surgeon. (T. at 419.) On October 25, 2013, Dr. Colman noted Plaintiff's buttock abscess showed "minimal induration without pain" and that a December surgery was planned. (T. at 922-23.) Dr. Colman's records also confirm that Plaintiff's buttock area was minimally "tender to palpation" at the November 19, 2013, office visit and that Plaintiff was no longer homeless. (T. at 920.) There is nothing in the record showing Plaintiff had any functional limitation relating to the buttock abscess.

Plaintiff also argues that the ALJ failed to consider his obesity in establishing the RFC. (Dkt. No. 11 at 21.) However, "obesity is not in and of itself a disability[.]" *Cruz v. Barnhart*, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citing SSR 02-1p, 2000 WL 628049 (SSA 2002)). Nevertheless, SSR 02-1p provides that a Listing is met "if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p, 2000 WL 628049, at *5. In other words, an ALJ should consider whether obesity, in combination with other impairments, prevents a claimant from working. *Id.* Nevertheless, "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. . . . We will evaluate each case based on the information in the case record." *Id.* at *6.

Here, the ALJ found Plaintiff's obesity to be a severe impairment. (T. at 24.) As set forth above, the health professionals who treated Plaintiff and opined on Plaintiff's functional limitations were all well aware of his obesity. Additionally, Dr. Puri also noted Plaintiff's weight

and listed "morbid obesity" as a diagnosis, but still found Plaintiff capable of functional activities commensurate with sedentary work. (T. at 285-87.) The ALJ relied on Dr. Puri's report in considering Plaintiff's functional capacity, and Dr. Puri's report noted consideration of Plaintiff's obesity. "Those circuits which have recently commented on this complaint have held that an ALJ's failure to explicitly address a claimant's obesity does not warrant remand . . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." *Guadalupe v. Barnhart*, 2005 WL 2033380, 04 CV 7644 HB, at \*6, 2005 U.S. Dist. LEXIS 17677, at \* 20 (S.D.N.Y. Aug. 24, 2005) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) and *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see also Stemple v. Astrue*, 475 F.Supp. 2d 527, 539 (D. Md. 2007) (noting that "some courts have found harmless error in certain cases where the ALJ fails to discuss a claimant's obesity") (citing, *inter alia*, *Cruz v. Barnhart*, No. 04 Civ 9011 (GWG), 2006 WL 1228581, at \* 9, 2006 U.S. Dist. LEXIS 26914, at \* 26-27 (S.D.N.Y. May 8, 2006)). Therefore, the Court finds substantial evidence supports the ALJ's RFC determination and that the ALJ considered Plaintiff's obesity in making that determination.

### B. Credibility and the RFC Determination

Plaintiff argues that the ALJ erred in the assessment of his credibility. (Dkt. No. 11 at 23.) Specifically, Plaintiff claims the ALJ mischaracterized the medical records regarding his pain treatment, his failure to see a specialist concerning his back complaints, and the treatment of his leg ulcer. *Id.* at 23-24. Plaintiff also claims the ALJ improperly accounted for Plaintiff's activities of daily living in the credibility assessment, and failed to address Plaintiff's complaints

of pain, his extensive work history prior to the onset of his impairments, and his anxiety. *Id.* at 24-26.

The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted). In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account. To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *Genier,* 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)). First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *2. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the

analysis is for the ALJ to the consider extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence. *Genier,* 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier,* 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p, 1996 WL 374186, at *3. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3)

precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis*, 62 F. Supp. 2d at 651 (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15 (S.D.N.Y. Mar. 25, 1999) (citing *Aponte v. Secretary*, 728 F.2d 588 (2d Cir. 1984); *Ferraris v. Heckler*, 728 F.2d 582 2d Cir. 1983)).  "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record.  *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled).  "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence."  *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence."  *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675

24

F.2d 55, 57 (2d Cir. 1982)).  An ALJ's evaluation of a plaintiff's credibility is entitled to great

deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00 Civ. 9621

(JSR)(FM), 2003 WL 470572, at * 10, 2003 U.S. Dist. LEXIS 6988, at *30 (S.D.N.Y. Jan. 21,

2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); *Bomeisl v. Apfel*, No.

96 Civ. 9718(MBM), 1998 WL 430547, at *6, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y.

July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and

such findings are entitled to deference because the ALJ had the opportunity to observe the

claimant's testimony and demeanor at the hearing.") (citation omitted).

Here, despite Plaintiff's argument to the contrary, the ALJ did not improperly consider

Plaintiff's daily activities.  The record shows Plaintiff drove about twenty miles per week, and

shopped for groceries.  (T. at 46, 179-180.)  He could lift and carry thirty pounds.  (T. at 54.)  He

fed his youngest child breakfast, played with his children, and could maintain his own hygiene

regimen.  (T. at 45, 46, 177-78, 180.)  His activities included playing chess, reading, watching

television.  (T. at 47.)  He reported "no problem" with reaching, using his hands, seeing, hearing,

and talking.  (T. at 182.)  Thus, Plaintiff's argument regarding credibility and the ALJ's treatment

of his reported activities of daily living is without merit as these reported activities are consistent

with an RFC for sedentary work.  *Poupore*, 566 F.3d at 307 (plaintiff's activities which included

caring for child, vacuuming and washing dishes, driving occasionally, watching television,

reading, and using the computer were consistent with an RFC for sedentary work).

Furthermore, the determination that Plaintiff could perform sedentary work is consistent

with the clinical findings and opinions of Dr. Puri and PA Martorana as noted above.  Though

Plaintiff complained of back pain, and pain from his skin ulcer and abscess, the ALJ did not err

in his credibility assessment when noting that Plaintiff did not seek treatment from a back specialist, nor did he err in the consideration of Plaintiff's complaints of other pain. Under certain circumstances a subjective experience of pain may support a finding of disability. *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (citing *Gallagher v. Schweiker*, 679 F.2d 82 (2d Cir. 1983)). This is not such a case. A claimant who alleges disability based on pain does not have to provide direct medical evidence confirming the extent of the pain, however there must be medical signs and laboratory findings that show that the claimant has a medical impairment which could reasonably be expected to produce the pain. *Id.*; 20 C.F.R. § 1529(a); 42 U.S.C. § 423(d)(5)(A) (2011). Here, the lack of treatment for back pain and lack of medical signs and laboratory findings regarding the back pain support the ALJ's determination of Plaintiff's credibility in that regard.

Furthermore, the ALJ's determination that the record contains a lack of support for Plaintiff's other complaints of disabling pain and mental impairments is consistent with the medical opinions of record. PA Martorana's opinion regarding Plaintiff's limitations was consistent with the RFC of sedentary work found by the ALJ. (T. at 28, 442.) According to PA Martorana, Plaintiff had no limitation regarding sitting and only moderate limitations in other areas such as walking and standing. (T. at 442.) Dr. Dambrocia and Dr. Stramenga found Plaintiff had mild functional limitations relating to his mental condition. *See* T. at 291, 355. Dr. Puri ultimately opined that Plaintiff did "not have any objective limitations in communication or fine motor or gross motor activity. There were no objective limitations to . . . [his] gait or to his activities of daily living . . . . He has mild limitation to squatting . . . [and] to moderate exertion." (T. at 287.) Dr. Puri also recommended that Plaintiff "not be in an environment which would

26

increase his respiratory complaints." *Id.* Dr. Colman completed a medical source statement dated January 3, 2014, but was unable to provide any opinion on Plaintiff's functional abilities based upon his limited interaction with Plaintiff. (T. at 915.)

Plaintiff's argument that the ALJ erred in failing to comment on Plaintiff's good work history is also without merit. First, Plaintiff acknowledged that he was discharged for sleeping on the job. (T. at 42, 169.) Additionally, while a plaintiff with a "good work record is entitled to substantial credibility when claiming an inability to work," *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir. 1983) (citation omitted), the disability must still be medically supported in the record. Courts in this Circuit have held that *Rivera* does not compel an ALJ to find a plaintiff substantially credible based upon the plaintiff's work record alone. *See Montaldo v. Astrue,* No. 10 Civ. 6163 (SHS), 2012 WL 893186 at *17-18, 2012 U.S. Dist. LEXIS 35250, at * 49-50 (S.D.N.Y. March 15, 2012) (assumption of credibility based upon work record can be rebutted by substantial evidence); *Johnson v. Astrue,* No. 07-CV-0322C, 2009 WL 3491300 at *7, 2009 U.S. Dist. LEXIS 98702, at * 17 (W.D.N.Y. Oct. 23, 2009) (good work history "cannot be a substitute for evidence of a medically supported disability"). "[W]ork history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998); *see also Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012). Here, as set forth above, the medical evidence of record supports the ALJ's determination that Plaintiff could perform sedentary work. Therefore, the Court finds it was supported by substantial evidence and, as such, Plaintiff's argument that the ALJ's determination of credibility was flawed because the ALJ did not consider his prior work record has no merit.

**C.      Step Five Determination**

Continuing with the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that a claimant is capable of performing other jobs existing in significant numbers in the national economy in light of claimant's RFC, age, education, and past relevant work.  20 C.F.R. §§ 416.920, 416.960.  *See Edwards v. Astrue*, No. 5:07 CV 898, 2010 WL 3701776, at *12, 2010 U.S. Dist. LEXIS 96830, at *38 (N.D.N.Y. Sept. 16, 2010).  Plaintiff asserts at step five that his nonexertional limitations rendered application of the "Grids" inapplicable.  (Dkt. No. 11 at 26.)  Specifically, Plaintiff argues he has significant nonexertional limitations due to anxiety and environmental restrictions which required the testimony of a vocational expert.  *Id.* at 26-27.  Defendant argues that the ALJ's RFC finding is supported by substantial evidence and the ALJ appropriately relied on the Grids to find Plaintiff not disabled.  (Dkt. No. 12 at 16-17.)   The Commissioner is correct and the Court finds no fault with the ALJ's step five determination.

A hearing officer can determine whether a claimant's nonexertional limitations significantly diminish his or her work capacity by determining whether the claimant can meet the basic demands of competitive, remunerative, and unskilled work as provided in Social Security Regulation 85  15.  SSR 85  15, 1985 WL 56857, at *3 (SSA Jan. 1, 1985).  These demands include the ability, on a sustained basis, to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  *Id.* at *4.  A substantial loss of ability to meet any of these demands would severely limit the potential occupational base.  *Sipe v. Astrue*, 873 F.

Supp. 2d 471, 480 (N.D.N.Y. 2012).

The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment. *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); 20 C.F.R. § 404.1569a(c)(2). The ALJ cannot rely on the Grids if a nonexertional impairment has any more than a "negligible" impact on the claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). A nonexertional impairment is non-negligible "when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 410. However, after it has been determined that a plaintiff can perform unskilled work, application of the Grids is appropriate. *Id*. at 410; s*ee also Howe v. Colvin,* No. 12 Civ. 6955, 2013 WL 4534940, at *18, 2013 U.S. Dist. LEXIS 12195 (S.D.N.Y. Aug. 27, 2013) (a claimant's limitation to simple, routine, and repetitive tasks in a low stress environment had little or no effect on the occupational base of unskilled sedentary work). "The mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

For reasons previously discussed, the ALJ properly determined Plaintiff's RFC and concluded that Plaintiff remains able, on a sustained basis, to perform the full range of sedentary work. (T. at 28, 29-30.) The record shows Dr. Stramenga found that Plaintiff could follow and understand simple instructions and directions, perform simple tasks independently, make appropriate decisions, and relate adequately to others. (T. at 291.) Dr. Dambrocia found Plaintiff only had mild difficulties maintaining social function and concentration, persistence, or pace. (T. at 355. Thus, any of Plaintiff's nonexertional mental limitations had little effect on the

occupational base of sedentary work such that the ALJ's reliance on the Grids was appropriate.

Plaintiff's argument that testimony of a vocational expert was necessary because of his limitations of exposure to respiratory irritants likewise is unpersuasive. Few occupations in the sedentary occupational base require work in environments with extreme cold, heat, wetness, humidity, or other respiratory irritants. *See* SSR 96-9p, 1996 WL 374185, *9 (July 2, 1996). Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base. *Id*. Therefore, there was no basis to require vocational testimony as the occupational base was not significantly eroded because Plaintiff was to avoid concentrated exposure to respiratory irritants. *Id*.

Since substantial evidence exists in the record for the ALJ to conclude that Plaintiff's nonexertional impairments did not significantly limit the range of work he could perform, the ALJ was under no obligation to identify specific jobs in the national economy that matched Plaintiff's RFC and his reliance on the Grids was appropriate. *Lawler v. Astrue*, 512 F. App'x 108, 112 (2d Cir. 2013). While the Commissioner has the burden to show that a claimant can still perform jobs that exist in the national economy, "[i]n the ordinary case, the Secretary satisfies his burden by resorting to the applicable medical vocational guidelines . . . ." *Bapp*, 802 F.2d at 604. Therefore, the ALJ did not err at Step Five of the sequential review. The ALJ's decision was based upon correct legal standards and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(g), 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's

motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be

**DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: November 30, 2015
        Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge